| | | |
|---|---|---|
| *WILLIAM JAMES RIGBY, JR.,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:11-cv-110-JAW* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on three bases: that the administrative law judge erred in (i) applying an inapposite "Grid" rule, (ii) improperly evaluating the opinion of treating source Deborah Peabody, M.D., and (iii) failing to properly evaluate his obesity. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 7) at 2-5. I find no reversible error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 14, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

had a severe impairment of coronary artery disease, status post myocardial infarction with stent, Finding 2, Record at 9; that he retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he was limited to standing and walking for at least two hours in an eight-hour workday and only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, Finding 4, *id*. at 10; that, considering his age (41 years old, defined as a younger individual, on the date his application was filed), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 13; and that he, therefore, had not been disabled since September 12, 2008, the date that his application was filed, Finding 10, *id*. The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The

record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Reliance on the Grid

The administrative law judge relied solely on application of the so-called "Grid," Appendix 2 to Subpart P, 20 C.F.R. § 404, to reach her conclusion of non-disability at Step 5. *See* Record at 13.

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983). When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet his burden of showing that there is other work that a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work that he or she can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).[2] Whether the commissioner may rely on the Grid in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional

---

[2] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id.* "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id.*

impairment is significant, the commissioner generally may not rely on the Grid to meet his Step 5 burden but must employ other means, typically the use of a vocational expert. *See, e.g., id.*

At oral argument, counsel for the commissioner conceded the plaintiff's point, *see* Statement of Errors at 2, that the administrative law judge erred in relying on Grid Rule 202.20, which pertains to individuals who retain the exertional capacity to perform light work, in the face of her finding that the plaintiff was limited to standing and walking for at least two hours in an eight-hour workday, *see* Finding 4, Record at 10, a standing/walking capacity inconsistent with the demands of light work, *see, e.g.*, Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-10"), at 29 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

Nonetheless, the error is harmless. In his statement of errors, *see* Statement of Errors at 3-4, the plaintiff acknowledged that the error would be harmless if he were capable of a full range of sedentary work, in which case the Grid rule pertaining to sedentary work capacity would direct a finding of non-disability, *see* Grid § 201.27 (younger individual with a maximum sedentary work capacity, at least a high school education, and no transferable work skills is not disabled). He acknowledged that, per the commissioner's regulations, a claimant who is capable of light work is presumed to be capable of sedentary work. *See* Statement of Errors at 3; 20 C.F.R. § 416.967(b) ("If [a claimant] can do light work, [the commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

However, he argued, in effect, that in this case the presumption is overcome because the administrative law judge failed to perform the function-by-function analysis required by Social

Security Ruling 96-8p ("SSR 96-8p") and omitted to resolve a conflict in the evidence concerning the extent of the plaintiff's capacity to sit. *See* Statement of Errors at 3-4; SSR 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011), at 146 ("[I]n order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions[.]").

To perform the full range of sedentary work, an individual must be able to sit for about six hours in an eight-hour workday. *See* SSR 83-10 at 29 (sedentary work is "performed primarily in a seated position"; in sedentary jobs, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday"). Two Disability Determination Services ("DDS") nonexamining consultants, Iver C. Nielson, M.D., and Donald Trumbull, M.D., found the plaintiff capable of meeting that sitting demand. *See* Record at 295, 330. However, Dr. Peabody deemed him capable of sitting for only about four hours in an eight-hour workday, *see id*. at 450, and he testified at hearing that he could sit for only an hour at a time, *see id*. at 32.

At oral argument, counsel for the commissioner argued that, although the administrative law judge did not make explicit findings concerning the plaintiff's sitting capacity, she implicitly resolved the conflict by choosing to accord greater weight to the opinions of Drs. Nielson and Trumbull than that of Dr. Peabody. *See id*. at 10, 12. I agree. *See Carmichael v. Astrue*, No. 1:10-cv-338-DBH, 2011 WL 2516202, at *3 (D. Me. June 14, 2011) (rec. dec., *aff'd* July 12, 2011) ("administrative law judge satisfies SSR 96-8p when assessment of RFC is based, in part, on state agency examiner's function-by-function analysis of exertional limitations"); *Kramer v.*

*Astrue*, No. 1:10-cv-207-JAW, 2011 WL 1158234, at *4 (D. Me. Mar. 25, 2011) (rec. dec., *aff'd* Apr. 28, 2011), *appeal docketed*, No. 11-1734 (1st Cir. June 28, 2011) ("Contrary to the plaintiff's contention, this court has not interpreted Social Security Ruling 96-8p to require the administrative law judge to list specifically the amount of each function the claimant can perform within the definition of light work, on pain of reversal.").

For these reasons, the plaintiff falls short of demonstrating that reversal and remand are warranted on the basis of the conceded error in applying Grid Rule 202.20.

## B. Treatment of Treating Source

The administrative law judge chose to accord little weight to Dr. Peabody's May 3, 2010, RFC opinion, *see* Record at 449-52, stating:

> Dr. Peabody opined that the [plaintiff] would be incapable of even low stress jobs and that she would expect him to miss more than four days of work per month. The undersigned has give[n] the opinion of Dr. Peabody limited weight, as it is not supported by the medical evidence of record as a whole. Moreover, the doctor's opinion appears to rest at least in part on an assessment of an impairment outside the doctor's area of expertise.

*Id*. at 12 (citation omitted).

The plaintiff complains that this perfunctory, conclusory discussion failed to supply the requisite "good reason" for rejecting the opinion, the administrative law judge having failed to explain how the opinion was inconsistent with the medical record as a whole or what area might be beyond Dr. Peabody's expertise. *See* Statement of Errors at 4; *see also, e.g.*, 20 C.F.R. § 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner,

"the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)").

Nonetheless, as counsel for the commissioner observed at oral argument, the administrative law judge elsewhere discussed evidence inconsistent with the Peabody opinion, including (i) the RFC opinions of Drs. Nielson and Trumbull, *see* Record at 9-10, and (ii) evidence of stability or improvement in the plaintiff's cardiac condition, as reflected, *inter alia*, in a February 2010 note of cardiovascular medicine specialist David Ferguson, M.D., stating that the plaintiff showed no evidence of heart failure, seemed to have a reduction in angina with long-acting nitrates, and continued to engage in "moderately heavy physical activity[,]" *id*. at 12 (quoting *id*. at 488).

In addition, as counsel for the commissioner noted, it is reasonably clear that the area outside of Dr. Peabody's expertise to which the administrative law judge alluded was cardiology. Dr. Peabody described functional limitations arising, *inter alia*, from the plaintiff's coronary artery disease and history of myocardial infarction. *See id*. at 449. However, on referral from Dr. Peabody, the plaintiff had been followed by cardiovascular specialists for his cardiac conditions. *See, e.g., id*. at 239-43, 312-14, 422-25.

Inconsistency with other evidence of record and the expressing of opinions in an area outside of a physician's area of specialty are valid reasons for assigning less weight to the opinion of a treating source. *See, e.g*., 20 C.F.R. § 416.927(d)(4)-(5). The administrative law judge accordingly committed no error in discounting Dr. Peabody's RFC opinion.

### C. Evaluation of Plaintiff's Obesity

The administrative law judge did not list obesity among the plaintiff's severe impairments. *See* Finding 2, Record at 9. However, in the body of her Step 2 discussion, she stated:

> During the period of time since the alleged onset date, the [plaintiff] has been noted to weigh between two hundred and thirteen and two hundred and seventeen pounds, with a body mass index between 31.5 and 32.0. Consideration has been given to the possible effects and impact obesity has on the [plaintiff's] ability to perform basic work activities. The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitations than might be expected from arthritis alone.

*Id*. at 9 (citations omitted).

The plaintiff complains that, in so stating, the administrative law judge merely set forth "meaningless boilerplate," failing to evaluate whether he had a medically determinable impairment of obesity, whether it was severe, and, if so, what functional limitations it might impose, as required by Social Security Ruling 02-1p ("SSR 02-1p"). *See* Statement of Errors at 5. He contends that the error was not harmless in that he testified that he was fatigued and needed to nap during the day, and SSR 02-1p recognizes that obesity may cause fatigue, limiting an individual's ability to sustain work full time. *See id*.; *see also* SSR 02-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011), at 257 ("In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.").

The administrative law judge's discussion of obesity lacks the specificity that might be expected. Nonetheless, the plaintiff points to no evidence of record tending to tie his obesity to specific limitations and, thus, falls short of the showing necessary to warrant reversal and remand on this basis. *See, e.g., Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (declining to order

remand on account of administrative law judge's failure to consider plaintiff's obesity when, "[a]lthough [the plaintiff's] treating doctors noted that [the plaintiff] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions").

Even assuming *arguendo* that the plaintiff's obesity did cause or exacerbate his fatigue, the administrative law judge took fatigue into account in determining his RFC. *See* Record at 12 ("Because of the [plaintiff's] continuing chest pain and fatigue, and giving the [plaintiff's] testimony some weight, the undersigned finds that the [plaintiff] has the residual functional capacity to perform less than a full range of light work. He can only stand for two to three hours in an average eight-hour work day and can only occasionally climb, balance, stoop, kneel, crouch or crawl."). To the extent that she did not fully credit his allegations, she pointed to evidence of daily activities demonstrating substantially greater functional capacities than those described by the plaintiff at his hearing, including the performance of house repairs, yard work, mechanics, and work as a handyman. *See id*. at 11. The plaintiff does not separately challenge her credibility determination. *See generally* Statement of Errors.

Any error in evaluating the plaintiff's obesity, therefore, was harmless.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***

Dated this 30th day of January, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge
